EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Vicmanuel Colón González<br><br>Peticionario | Certiorari<br><br>2022 TSPR 83<br><br>209 DPR ____ |

Número del Caso: CC-2021-124

Fecha: 29 de junio de 2022

Tribunal de Apelaciones:

    Panel XII

Abogado de la parte peticionaria:

    Lcdo. Luis Miranda Díaz

Oficina del Procurador General:

    Lcdo. Fernando Figueroa Santiago
    Procurador General

    Lcdo. Javier O. Sepúlveda Rodríguez
    Subprocurador General

Materia: Procedimiento Criminal y Derecho Probatorio: Estándar para la validez de una presunción contra la persona acusada; efecto del error en una instrucción impartida al Jurado sobre un elemento del delito de portación y uso de un arma de fuego sin licencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

                            CC-2021-0124

Vicmanuel Colón González

    Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Martínez Torres

En San Juan, Puerto Rico, a 29 de junio de 2022.

Se nos plantea que aclaremos si la instrucción impartida al jurado -amparada en la presunción de portación ilegal de armas- en la etapa del juicio, violentó el debido proceso de ley del acusado. Resolvemos que sí, pero confirmamos la convicción del peticionario porque estuvo basada en otra prueba de que en efecto no tenía licencia para portar arma.

I

Al Sr. Vicmanuel Colón González se le acusó por asesinato en primer grado [Art. 93(a) del Código Penal, 33 LPRA sec. 5142], portar y usar un arma de fuego sin licencia [Art. 5.04 de la Ley de Armas, 25

LPRA ant. sec. 458c], disparar un arma de fuego [Art. 5.15 de la Ley de Armas, 25 LPRA ant. sec. 458n] y destrucción de pruebas [Art. 286 del Código Penal, 33 LPRA sec. 5378]. Específicamente, se le imputó que, utilizó un arma de fuego para la que supuestamente no poseía licencia e hizo múltiples disparos al Sr. Joshua Ahmed Mayoral González ocasionándole la muerte. También se le acusó de desaparecer el arma de fuego.

El señor Colón González confesó los hechos. Acudió voluntariamente al cuartel de la policía y prestó una declaración jurada ante una fiscal del Departamento de Justicia. En el juicio en su fondo, ante un jurado, el Ministerio Público presentó evidencia testimonial, documental y demostrativa. Tras la presentación de la prueba, el jurado rindió un veredicto unánime de culpabilidad en todos los cargos. El Tribunal de Primera Instancia notificó una sentencia condenando al señor Colón González a una pena de cárcel de 129 años.

En desacuerdo, el señor Colón González compareció al Tribunal de Apelaciones mediante un recurso de Apelación. En su alegato discutió señalamientos de error sobre la defensa de inimputabilidad, la configuración del delito de asesinato atenuado y la duplicidad de las penas en virtud del Art. 7.03 de la Ley de Armas, 25 LPRA sec. 460b. Así, solicitó que se le absolviera de todos los cargos por razón de inimputabilidad. En la alternativa, requirió que el foro apelativo intermedio revocara la sentencia por asesinato en

primer grado y en su lugar, lo declarase culpable por el delito menor incluido de asesinato atenuado. A su vez, solicitó que ese foro revocara la duplicidad de las penas impuestas por el Art. 7.03 de la Ley de Armas, supra, y la sentencia dictada por el delito del Art. 5.04 de la Ley de Armas, supra.

Aunque no lo enumeró expresamente como un error, el señor Colón González sostuvo que la determinación de culpabilidad en el delito por el Art 5.04 de la Ley de Armas, supra, fue contraria a derecho. En síntesis, sostuvo que "en nuestra jurisprudencia está firmemente establecida la llamada doctrina de corroboración del corpus delicti. Esta requiere que las confesiones o admisiones en casos criminales sean corroboradas con prueba independiente". Ap. Cert. pág. 106.

Por su parte, en lo pertinente al error del Art. 5.04 de la Ley de Armas, supra, el Procurador General sostuvo que la falta de prueba adicional (aliunde) sobre la no licencia de portar armas no debía afectar la condena por disparar con ella. El Tribunal de Apelaciones, luego de evaluar los errores discutidos por el señor Colón González, incluyendo el relacionado con el Art. 5.04 de la Ley de Armas, supra, confirmó la sentencia apelada.

Inconforme, el señor Colón González compareció ante nos mediante un recurso de certiorari y señaló que el Tribunal de Apelaciones erró al confirmar la condena por infracción del Art. 5.04 de la Ley de Armas, supra, descansando

solamente en una confesión que no se corroboró. Además, señaló que el foro intermedio erró al confirmar al foro primario en la imposición de la pena por infracción del Art. 5.15 de la Ley de Armas, <u>supra</u>.

Evaluado el recurso, el 30 de abril de 2021, emitimos una Resolución en la que ordenamos al Procurador General comparecer y mostrar causa por la cual no debíamos revocar la convicción del señor Colón González por infringir el Art. 5.04 de la Ley de Armas, <u>supra</u>. El Procurador General compareció y, como cuestión de umbral, sostuvo que el señor Colón González no presentó ante el Tribunal de Apelaciones error alguno dirigido a cuestionar la convicción por violar el Artículo 5.04 de la Ley de Armas, <u>supra</u>. En cuanto al señalamiento de error planteó -en síntesis- que "la corroboración de la confesión no requiere que se presente prueba de todos los elementos del delito, pues ello eliminaría el valor de la confesión". <u>Escrito en cumplimiento de orden de mostrar causa</u>, pág.15. Añadió que "en el presente caso, las confesiones por los delitos sí fueron corroboradas y se presentó prueba circunstancial de la ilegalidad de la portación. La condena del peticionario no se basó simplemente en una presunción ni solamente en la confesión". <u>Íd</u>.

Con el beneficio de la comparecencia de ambas partes, se expide el recurso de <u>certiorari</u> y resolvemos únicamente el primer señalamiento de error.

II

En primer lugar, debemos atender el señalamiento del Procurador General en cuanto a que el señor Colón González no señaló error alguno en el foro apelativo intermedio dirigido a cuestionar la convicción por violar el Art. 5.04 de la Ley de Armas, supra. En nuestro modelo apelativo es indispensable que todo escrito presentado ante un tribunal apelativo señale, discuta y fundamente el error o los errores que se le imputan al foro apelado o recurrido. Ortiz v. Holsum, 190 DPR 511, 526 (2014). Esto es así ya que solo mediante un señalamiento de error y una discusión fundamentada, con referencia a los hechos y las fuentes de derecho en que se sustenta, el foro apelativo estará en posición de atender los reclamos que se le plantean. Morán v. Martí, 165 DPR 356, 366 (2005).

En Hons. Castro, Cabán v. Depto. de Justicia, 153 DPR 302, 312 (2001), expresamos -ante la negativa del entonces Tribunal de Circuito de Apelaciones a discutir un error que fue señalado, pero no discutido- que es una norma reiterada que "[e]n aras de impartir justicia, un tribunal apelativo tiene la facultad inherente de considerar y resolver errores patentes que surjan de un recurso aun cuando éstos no hayan sido presentados por las partes". Lo importante es que la naturaleza y cuestiones relevantes de la apelación surja con claridad del escrito de apelación de modo que el tribunal ni la parte apelada se vean perjudicada por la falta de señalamiento de error. Delagrave v. Employment Sec. Dept. of

State of Wash., 127 Wash. App. 596, 111 P.3d 879 (2005). De ese ser el caso, no hay ninguna razón de peso para que el tribunal no ejerza su discreción para atender en sus méritos la apelación. Íd.

Al evaluar el *Escrito de apelación y el Alegato de apelación* presentados por el señor Colón González ante el Tribunal de Apelaciones, podemos confirmar que no enumeró expresamente el error dirigido a cuestionar la convicción por violar el Art. 5.04 de la Ley de Armas, supra. Sin embargo, surge de su *Alegato de apelación* que este discutió ese error, con referencia a los hechos y las fuentes de derecho en que se sustentaba su posición. Específicamente, hizo "mención especial sobre la determinación de culpabilidad en el delito por el Art 5.04 de la Ley de Armas, 25 LPRA sec. 458c". Ap. Cert. pág. 105. Además, arguyó que esa "determinación del Jurado estuvo errada en derecho". Íd. En síntesis, indicó que, como parte de las instrucciones finales, el Tribunal de Primera Instancia instruyó al jurado que "[c]uando el Ministerio Fiscal ha probado más allá de duda razonable la portación de arma le corresponde al acusado probar como defensa afirmativa que sí estaba autorizado a portar un arma de fuego". Transcripción Estipulada, Tomo del 14 de febrero de 2019, pág. 87, líneas 22 a la 25.

Entre otras cosas, el señor Colón González alegó que la instrucción al jurado violentó su presunción de inocencia y relevó totalmente al Ministerio Público de su deber de

probar más allá de duda razonable todos los elementos del delito.

Sostuvo que, según lo resuelto en Pueblo v. Nieves Cabán, 201 DPR 853, 881 (2019), en la etapa del juicio "corresponde al Estado probar más allá de duda razonable la comisión del delito de la forma que en derecho proceda". Además, citando a Pueblo v. Fradera Olmo, 122 DPR 67, 73 (1988), argumentó que "en nuestra jurisprudencia está firmemente establecida la llamada doctrina de corroboración del *corpus delicti*. Esta requiere que las confesiones o admisiones en casos criminales sean corroboradas con prueba independiente". Ap. Cert. pág. 106. Así, suplicó al foro apelativo intermedio que revocara la sentencia dictada por el Art. 5.04 de la Ley de Armas, supra.

Así, el Tribunal de Apelaciones reconoció que "a pesar de no haber formulado un señalamiento de error al respecto, el apelante alegó en su recurso que el TPI erró al ofrecer la […] instrucción al Jurado sobre el delito de portación y uso de arma de fuego sin licencia". Ap. Cert. pág. 39. Consecuentemente discutió y dispuso del error.

De igual forma, el propio Procurador General reconoció el error discutido por el señor Colón González, cuando sostuvo en su alegato ante el Tribunal de Apelaciones que la falta de prueba adicional (aliunde) sobre la no licencia de portar armas, más allá de la confesión, no debía afectar la condena por disparar con ella. Específicamente expresó:

> Debemos señalar que el hecho de la **falta de prueba adicional (aliunde) sobre la no licencia de**

**portar (artículo 5.04 de la Ley de Armas) más allá de la confesión, no debe afectar la condena por disparar con ella.** Y es que se puede disparar (artículo 5.14 de La Ley de Armas) con un arma para la cual se tenía licencia, pues la licencia o ausencia de esta no es un elemento del delito de disparar en un sitio público. (Énfasis nuestro). Ap. Cert., pág. 76.

En resumen, aunque el señor Colón González no enumeró el error sobre la presunción de portación ilegal de arma, conforme a la Regla 26(C)(4) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, este discutió en detalle el error en su alegato, con referencia a los hechos y las fuentes de derecho en que se sustentaba su posición. La omisión de señalar el error no es lo ideal, pero tampoco perjudicó al Gobierno de defenderse y no impidió que el foro apelativo estuviera en posición de atender el error. Ahora bien, exhortamos a las partes y su representación legal a ser celosos con el cumplimiento de los reglamentos de los tribunales.

III

La Ley Núm. 404-2000, según enmendada, conocida como la Ley de Armas de Puerto Rico, 25 LPRA secs. 455 et seq., vigente al momento de los hechos, es producto del poder inherente de reglamentación sobre la posesión, portación y venta de armas de fuego que tiene el Estado. Pueblo v. Barahona Gaitán, 201 DPR 567, 577 (2018).[1]

---

[1] La Ley Núm. 404-2000 fue derogada y sustituida por la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, en vigor desde el 1 de enero de 2020.

En lo pertinente a este caso, el Art. 5.04 de la Ley de Armas, supra, establecía un delito especial para aquellos que portaran y usaran armas sin el debido permiso. El referido artículo disponía que

> [t]oda persona que transporte cualquier arma de fuego o parte de ésta, **sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas**, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años. Íd.

El Art. 5.04 de la Ley de Armas, supra, también disponía que "[s]e considerará como agravante cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa". Íd. Asimismo, establecía que, si el arma se utilizaba para cometer el delito de asesinato en cualquier grado, la persona no tenía derecho a una sentencia suspendida o libertad bajo palabra. Íd.

Tal como se desprendía del Art. 5.04 de la Ley de Armas, supra, el delito de portación ilegal de un arma de fuego conllevaba, **como elemento esencial e imprescindible, una ausencia de autorización para la correspondiente portación.** Pueblo v. Negrón Nazario, 191 DPR 720, 752 (2014). En ese caso establecimos que la ausencia de una autorización para la correspondiente portación de arma era un **requisito** para la comisión del delito allí tipificado. Íd., pág. 757. Expusimos que la portación ilegal de un arma de fuego podía demostrarse en el juicio con: (1) evidencia de que, en

efecto, la persona portó un arma de fuego **sin un permiso a tales efectos**, en cuyo caso la **prueba debe estar dirigida a demostrar la portación de arma y la ausencia de permiso**, y (2) evidencia de que aun cuando la persona contaba con un permiso de portación, no la portó según los términos autorizados. Íd.

Por lo tanto, para probar el delito tipificado en el Art. 5.04 de la Ley de Armas, supra, se requiere probar los dos elementos del delito: portación de arma y ausencia de autorización para portar arma.

IV

Desde mediados del siglo pasado hemos establecido que una vez el Estado prueba que el acusado portaba un arma en la fecha indicada, automáticamente se levanta una presunción de que el acusado portaba el arma sin licencia. Pueblo v. Segarra, 77 DPR 736, 738 (1954); Pueblo v. Pacheco, 78 DPR 24, 30 (1955). Establecida la presunción, le corresponde al acusado presentar prueba de que sí tenía licencia para portar el arma. "En ausencia de tal prueba estableciendo [que contaba con licencia para portar el arma], el jurado [está] justificado en hallar al acusado culpable [por portar un arma de fuego sin licencia]". Pueblo v. Segarra, supra, pág. 738.

Esa presunción es producto de un contexto histórico en que la posesión y portación de armas se consideraba un privilegio y no un derecho. Así lo reconocimos en Pueblo v. Del Río, 113 DPR 684, 689 (1982), al expresar que en "nuestra

jurisdicción la posesión y/o portación de un arma de fuego *no* es un derecho y si un privilegio..." (Énfasis en el original). La inserción de un derecho constitucional a la portación de armas se contempló en la Asamblea Constituyente y fue rechazada. El constituyente y luego gobernador de Puerto Rico, Luis A. Ferre Aguayo, propuso que se insertara en la Sec. 8 de la Carta de Derechos de la Constitución que "No se coartará el derecho del individuo a poseer un arma en su hogar para su defensa propia". 3 Diario de Sesiones de la Convención Constituyente 1529 (1961). Esta propuesta fue derrotada por la mayoría de los constituyentes. Íd. Véase, además, J. Negrón Torres, Segunda Enmienda de la Constitución federal: su aplicación a Puerto Rico como territorio de los Estados Unidos, 54 Rev. Der. P.R. 167, 176-177 (2014).

Como podemos apreciar, la génesis de la presunción en controversia tiene como base la negativa de los constituyentes a reconocer la posesión o portación de armas como un derecho en la Constitución. Esto lo diferencia de la Segunda Enmienda en la Constitución federal. Podemos argumentar que una posible razón por la cual los constituyentes no incluyeron el derecho a poseer o portar armas en la Constitución de Puerto Rico fue que no estaban obligados a hacerlo porque se entendía que la garantía de la Segunda Enmienda solo era oponible frente al gobierno federal. Eso es así pues no fue hasta McDonald v. City of Chicago, 561 US 742 (2010), que se reconoció que el derecho

a poseer armas reconocido en la Segunda Enmienda de la Constitución federal es un derecho fundamental extensivo bajo la Cláusula de Debido Proceso a los estados. Íd., pág. 750. Este reconocimiento es igualmente extensivo a Puerto Rico. Esto es así porque el Tribunal Supremo federal ha reconocido a los ciudadanos americanos residentes en Puerto Rico los mismos derechos fundamentales que la Decimocuarta Enmienda de la Constitución federal, Emda. V, XIV, Const. EE. UU., LPRA, Tomo I, ed. 2016, le reconoce a los conciudadanos residentes en los estados. Véase: Torres v. Puerto Rico, 442 US 465, 471 (1979); Examining Bd. v. Flores de Otero, 426 US 572, 599-601 (1976); Calero-Toledo v. Pearson Yacht Leasing Co., 416 US 663, 668 esc. 5 (1974).

Luego del pronunciamiento del Tribunal Supremo federal en McDonald v. City of Chicago, supra, es inescapable concluir que la posesión y portación de armas por parte de un ciudadano americano residente en Puerto Rico es un derecho fundamental -que el gobierno puertorriqueño tiene que respetar- y no un privilegio.

Ahora bien, tras esta realidad y al descartarse la visión de que la portación de arma es un privilegio ¿se sostiene en nuestra jurisdicción, en la etapa del juicio, la presunción de que, una vez probada la posesión de arma, se presume que su tenencia es sin licencia y le toca al ciudadano probar que sí tiene licencia para portar el arma?

Recientemente, en Pueblo v. Nieves Cabán, 201 DPR 853, 876 (2019), atendimos una controversia sobre la aplicación

de la presunción de armas aquí en disputa. En esencia, resolvimos que, **en la etapa de vista preliminar**, el Tribunal de Primera Instancia podía encontrar causa probable para juicio por violación del Art. 5.04 de la Ley de Armas, supra, al hacer una inferencia o aplicar una presunción de portación ilegal de armas de fuego. En ese caso nos ceñimos a la vista preliminar, los cimientos en que se sustenta esa audiencia creada estatutariamente y el efecto que puede tener una inferencia o presunción en el juicio de probabilidades en esa etapa. Íd., págs. 862-63.

Explicamos que en la vista preliminar la obligación del Ministerio Público no es presentar toda la prueba que desfilará en el juicio. La "única exigencia es que la evidencia que se presente sea admisible si se presentara en el juicio". Íd., pág. 879. Por lo tanto, no era necesario hacer "el examen constitucional que ha elaborado la jurisprudencia, al igual que la norma que establece la Regla 303 de Evidencia de Puerto Rico, supra, [porque solo] se limitan a la etapa del juicio". Íd. Añadimos que en el juicio el Pueblo "deberá probar la culpabilidad del acusado más allá de duda razonable y el juzgador emitirá el dictamen final en cuanto a si se acreditó la culpabilidad de la persona acusada" ya que "el juicio en su fondo es el momento realmente culminante y crítico en el proceso criminal". Íd. págs. 865-66.

Indicamos que "[d]urante el juicio, entonces, es que corresponde al Estado probar más allá de duda razonable la

comisión del delito de la forma que en derecho proceda". *Íd.*, pág. 881. Explicamos que esta doctrina se cimenta en la obligación constitucional del Estado de cumplir con el estándar de prueba más allá de duda razonable y no en la *scintilla* o evaluación de probabilidades que se efectúa en la vista preliminar. *Íd.*, pág. 878. Por último, añadimos que, "en ese momento, es que corresponderá evaluar si es válido aplicar esta presunción en el caso de que el dictamen se sustente en ella". *Íd.*

En este caso llegamos al momento que anticipamos en *Pueblo v. Nieves Cabán*, *supra*. Ahora bien, para evaluar si procede la aplicación de la presunción en controversia en la etapa del juicio, debemos repasar las implicaciones que tienen las presunciones en los procesos criminales.

Hemos expresado que existen distintos tipos de presunciones según sus características. Por un lado, están las presunciones controvertibles o incontrovertibles; por otro, las mandatorias o permisibles. *Pueblo v. Nieves Cabán*, *supra*, pág. 872; *Pueblo v. Sánchez Molina*, 134 DPR 577, 587 (1993). De igual manera, las presunciones pueden ser fuertes o débiles conforme al *quantum* de prueba que se requiere de quien debe atacarla. *Pueblo v. Nieves Cabán*, *supra*, pág. 872.

Las presunciones permisibles o no mandatorias no transfieren al acusado **el peso de la prueba ni la obligación de persuadir al juzgador.** Por eso, son válidas a menos que el acusado pueda demostrar que, a la luz de los hechos

probados en su caso particular, no había un nexo racional entre el hecho básico y el hecho presumido. Íd., pág. 875 citando a Pueblo v. Sánchez Molina, supra, págs. 587-588. Así, siempre que no sean la única base en que descansa la determinación de culpabilidad, basta que la presunción satisfaga el criterio de probabilidad. Ulster County Court v. Allen, 442 US 140, 167 (1979). Una presunción incontrovertible no puede ser rebatida, por lo que el hecho base obliga a hacer la inferencia del hecho presumido sin que la parte contra quien se aplica la presunción pueda presentar prueba sobre la inexistencia del hecho presumido. Si pudiera rebatirse, es decir, si existe la posibilidad de presentar evidencia para demostrar la inexistencia del hecho presumido, estamos ante una presunción controvertible. Regla 301 de Evidencia de Puerto Rico, supra.

Por su parte, hemos expresado que las presunciones mandatorias son las que el juzgador está obligado a seguir y, por lo tanto, viene forzado a inferir el hecho presumido. Pueblo v. Nieves Cabán, supra, pág. 872. La presunción es mandatoria cuando una vez establecido el hecho básico, **si no se presenta evidencia alguna para refutar el hecho presumido, el juzgador está obligado a inferirlo**. Íd. Contrario a lo anterior, ante una presunción permisible, el juzgador puede —pero no tiene— que inferir el hecho presumido. Es decir, una presunción es permisiva cuando a pesar de establecerse el hecho básico y no haberse presentado evidencia alguna para refutar el hecho presumido, la regla

solo autoriza, pero no obliga al juzgador a inferir el hecho presumido. Íd.

La Regla 303 de Evidencia de Puerto Rico, supra, regula el efecto de las presunciones en los casos criminales para ajustar estas normas sobre inferencias a la doctrina constitucional. Pueblo v. Nieves Cabán, supra, pág. 878. Estas normas se limitan a la etapa del juicio y responden a la obligación del Ministerio Público de probar el caso más allá de duda razonable. Íd., pág. 879. Al evaluar la validez de las presunciones, el Tribunal ha esbozado como parámetro a seguir el que estas no alteren el peso de la prueba impuesto al Estado y, asimismo, que no lesionen la presunción de inocencia. Específicamente, la Regla 303 de Evidencia, supra, establece:

> **Cuando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de <u>permitir</u> a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo.** Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada. La presunción **no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito** o de refutar una defensa de la persona acusada.
> (a) Cuando beneficia a la persona acusada, la presunción tendrá el mismo efecto que lo establecido en la Regla 302 de este apéndice.
> (b) Instruir al jurado sobre el efecto de una presunción contra la persona acusada, la jueza o el juez deberá hacer constar que:
> (1) Basta que la persona acusada produzca duda razonable sobre el hecho presumido para derrotar la presunción, y
> (2) **el jurado no estará obligado a deducir el hecho presumido, <u>aun cuando la persona acusada no produjera evidencia en contrario</u>.** Sin embargo, **se instruirá al jurado en cuanto a que puede deducir o inferir el hecho presumido si considera establecido el hecho básico.** (Énfasis Nuestro).

Como vemos, en los procesos penales, el efecto de la presunción depende de si esta beneficia o perjudica al acusado. "Una presunción que favorece al ministerio público y perjudica al acusado tiene que ser una presunción controvertible, permisiva y débil". Pueblo v. Nieves Cabán, supra, pág. 873. Por lo tanto, no puede tener el efecto de obligar al acusado a "presentar evidencia para refutar el hecho presumido-so pena de obligar al juzgador a inferir el hecho presumido- ni imponerle la obligación de establecer que lo más probable es que el hecho presumido no ocurrió, al menos cuando el hecho presumido es un elemento esencial para la culpabilidad del acusado". E.L. Chiesa Aponte, Tratado de derecho probatorio: Reglas de evidencia de Puerto Rico y Federales, República Dominicana, Ed. Corripo, 1998, T. II, pág. 1099.

Es decir, si la presunción perjudica al acusado y es el ministerio público quien quiere que se infiera el hecho presumido, el efecto de la presunción es débil. E.L. Chiesa Aponte, Reglas de Evidencia comentadas, 1er ed., Puerto Rico, Ed. Situm, 2016, pág. 66. Esto significa que, "**aunque la defensa no presente evidencia alguna para refutar el hecho presumido, el juzgador no está obligado a inferirlo, solo está autorizado a inferirlo**". (Énfasis nuestro). Íd. En estos casos, **no se le impone al acusado ni siquiera la obligación de presentar evidencia**. Íd.

A esos efectos, en Pueblo v. De Jesús Cordero, 101 DPR 492, 501 (1973), al evaluar la validez de las presunciones,

este Tribunal esbozó —como parámetro a seguir— que estas **no alterarán el peso de la prueba impuesto al Estado**. Esto es así ya que **las presunciones no pueden lesionar la presunción de inocencia**. Conforme a la norma constitucional que adoptamos de la jurisprudencia federal, se prohíbe que las presunciones en los procedimientos penales se apliquen arbitrariamente en el caso o que eximan al ministerio público "de cumplir con su deber de probarle al juzgador de los hechos que el acusado es culpable más allá de toda duda razonable". Pueblo v. Sánchez Molina, supra, pág. 587. Véanse, además: Francis v. Franklin, 471 U.S. 307 (1985); Yates v. Aiken, 484 US 211, 214 (1988); Ulster County Court v. Allen, supra, pág. 156; Mullaney v. Wilbur, 421 US 684, 703-704 (1975).

Por su parte, en Pueblo v. Sánchez Molina, supra, pág. 595, nos enfrentamos a una controversia sobre las instrucciones al jurado respecto a una presunción. Concluimos que "el magistrado debió explicar que una inferencia permisible **permite, pero no obliga a inferir el hecho presumido una vez probado el hecho básico**". (Énfasis nuestro). Íd. Añadimos que el Tribunal de Primera Instancia debió explicar que "basta que el acusado arroje duda razonable sobre el hecho presumido para que no opere la presunción, **y que aún si el acusado no presenta prueba a esos efectos, [el jurado] no viene obligado a inferir el hecho presumido**". (Énfasis nuestro). Íd. Así, sostuvimos que no impartir estas instrucciones tiene el efecto potencial de

convertir la inferencia en una presunción mandatoria sobre un elemento del delito y que esto atenta contra la presunción de inocencia del acusado porque releva al Estado de probar su caso más allá de toda duda razonable, e impone sobre el acusado el peso de persuadir mediante la presentación de prueba para refutar la presunción. Íd.

V

En un juicio por jurado, el tribunal debe impartir instrucciones haciendo un resumen de la evidencia y exponiendo todas las cuestiones de derecho necesarias para la información del jurado. Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II. Las instrucciones deben ser correctas, claras, precisas y lógicas. Pueblo v. Ortiz Martínez, 116 DPR 139 (1984). A los fines de hacer viable esta encomienda, hemos adoptado un manual de instrucciones al jurado. Conferencia Judicial de Puerto Rico, Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, 2da ed., San Juan, Ed. C. Abo. ER., 1977. Este informe recibió nuestro endoso y aprobación. In re-Aprobación del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, 104 DPR 1067 (1976) (Resolución).

La utilización del libro de instrucciones es discrecional. In re-Aprobación del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, supra. Sin embargo, hemos reconocido que constituye una buena práctica su utilización en aras de disminuir las posibilidades de

error en las instrucciones al jurado y de lograr mayor uniformidad en la administración de la justicia criminal. Pueblo v. Echevarría Rodríguez I, 128 DPR 299, 343 (1991). Las instrucciones que son impartidas según el manual están cobijadas por una presunción de corrección. Pueblo v. Ortiz González, 111 DPR 408, 410 (1981). Por lo tanto, quien las impugne deberá demostrar afirmativamente que la instrucción es errónea. Íd. "Para determinar la corrección o incorrección de las instrucciones hay que considerarlas en su totalidad y no por frases aisladas". Pueblo v. Echevarría Rodríguez I, supra, pág. 344.

Ahora bien, debemos destacar que, en atención a los cambios que ha sufrido el ordenamiento jurídico penal en Puerto Rico y su desarrollo jurisprudencial desde la publicación del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico, nos hemos movido a realizar estudios preliminares sobre este, con el fin de recoger el insumo y recomendaciones de la comunidad jurídica para actualizar su contenido. Las últimas se recogen en el Proyecto de libro de instrucciones al jurado de 2008[2] (Proyecto de libro de instrucciones al jurado). Este proyecto que trabajó el Comité para la Revisión del Manual de Instrucciones sirve de guía para los foros de instancia.

En el caso de epígrafe, el Tribunal de Primera Instancia, amparado en la presunción de portación ilegal de

---

[2] Proyecto de libro de instrucciones al jurado de septiembre de 2008, https://www.poderjudicial.pr/Documentos/SecretariadoConf/Proyecto-Instrucciones-Jurado-septiembre-2008.pdf.

armas, dictó la instrucción 18.1 del Proyecto de libro de instrucciones al jurado.[3] Esta instrucción descansa en la instrucción sobre portación ilegal de armas del Libro de instrucciones al jurado de 1976. Col. Abog. PR, <u>Instrucciones al jurado para el Tribunal Superior de Puerto Rico</u>, 2da ed. Rev., San Juan, 1977, págs. 293-295.[4]

En lo pertinente, la instrucción 18.1 del Proyecto de libro de instrucciones al jurado lee como sigue:

> Cuando el ministerio fiscal ha probado más allá de duda razonable la portación de arma le corresponde al acusado probar como defensa afirmativa que sí estaba autorizado a portar un arma de fuego. Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida están convencidos y convencidas de que el ministerio fiscal probó, más allá de duda razonable el delito imputado, deberán rendir un veredicto de culpabilidad. Proyecto de libro de instrucciones al jurado de septiembre de 2008, <u>supra</u>, pág. 221. Véase, además, Transcripción Estipulada, Tomo del 14 de febrero de 2019, pág. 87, líneas 22 a la 25.

Esta instrucción indudablemente tuvo el efecto de alterar el peso de la prueba y hacer mandatoria la presunción en controversia. En otras palabras, la instrucción impartida por el juez relevó al ministerio fiscal de probar la ausencia de autorización para portar armas, uno de los elementos tipificados en el Art. 5.04 de la Ley de Armas, <u>supra</u>. Por

---

[3] <u>Íd</u>., págs. 219-224.
[4] Para fines comparativos se incluye, en lo pertinente, la instrucción del del Libro de instrucciones al jurado de 1976:

"Debo instruirles, Señores del Jurado, que en estos casos en que se acusa a una persona de portar un arma sin tener licencia expedida por el Superintendente de la Policía de Puerto Rico o por el Tribunal Superior del sitio del domicilio del acusado, el fiscal no está obligado a probar que el acusado no tiene licencia si se ha alegado tal hecho en la acusación y probado fuera de toda duda razonable tal portación, incumbiendo al acusado a establecer dicha alegación como una defensa afirmativa, es decir, corresponde al acusado probar que sí estaba autorizado a portar un arma".

lo tanto, le impuso al señor Colón González la obligación de "producir prueba para persuadir al juzgador en torno a la no ocurrencia de ese elemento o hecho". Pueblo v. Sánchez Molina, supra, pág. 587. Nótese que en los comentarios del Proyecto de instrucciones al jurado se advirtió de dudas sobre la constitucionalidad de la presunción en cuestión. Proyecto de instrucciones al jurado, supra, pág. 224.

En Sánchez Molina expresamos -citando jurisprudencia federal- que el efecto que tiene la presunción mandatoria de relevar al Ministerio Fiscal de probar cada elemento del delito más allá de toda duda razonable es "impermisible por atentar contra la presunción de inocencia y el derecho a no ser privado de la libertad sin un debido proceso de ley". Íd. Por lo tanto, es inconstitucional. Íd., pág. 588. Véanse, además, Francis v. Franklin, 417 US 307, 313-314 (1985); Yates v. Aiken, 484 US 211, 214 (1988); Ulster County Court v. Allen, 442 US 140, 156 (1979); Mullaney v. Wilbur, 421 US 684, 703-704 (1975).

Precisamente los efectos que catalogamos como impermisibles e inconstitucionales en Sánchez Molina, supra, son los que tienen la instrucción en este caso. En ese sentido, y acorde con nuestro pronunciamiento en Sánchez Molina, supra, y la vasta jurisprudencia federal allí citada, entendemos que la instrucción en cuestión, tal cual redactada e impartida, no tenía espacio, **en la etapa del juicio**, por contravenir preceptos fundamentales de la Constitución de Puerto Rico y de la Constitución federal,

parte del debido proceso de ley, tales como la presunción de inocencia y la obligación del Estado de probar más allá de duda razonable todos los elementos del delito.

Por lo tanto, la instrucción de portación ilegal del Libro de instrucciones al jurado de 1976, supra, y del Proyecto de instrucciones al jurado, supra, que son esencialmente iguales, no se puede utilizar para impartir instrucciones al jurado en casos relacionados con la infracción del Art. 5.04 de la Ley de Armas, supra. En su lugar, el Tribunal deberá explicar que la presunción de portación ilegal permite, pero no obliga a inferir el hecho presumido (la falta de licencia para portar arma). Así solo basta que el "acusado arroje duda razonable sobre el hecho presumido para que no opere la presunción, y que aún si el acusado no presenta prueba a esos efectos, no viene obligado [el jurado] a inferir el hecho presumido". Pueblo v. Sánchez Molina, supra, pág. 595. De esta forma se evita que la instrucción impartida haga mandatoria la presunción sobre un elemento del delito. Íd.

Es menester señalar que recientemente este Tribunal aprobó un nuevo *Libro de Instrucciones al Jurado*. In re: Aprobación del Libro de Instrucciones al Jurado y otros, 2022 TSPR 33 208 DPR __ (2022). En lo pertinente a la controversia ante nuestra consideración, la instrucción 13.9 Posesión de Armas de Fuego sin Licencia, establece lo siguiente:

Contra la persona acusada se ha presentado una acusación por el delito de Posesión de Armas de Fuego sin Licencia.

La ley dispone que comete este delito la persona que tenga o posea un arma de fuego sin tener licencia para ello.

Los elementos de este delito son los siguientes:

(1) Tener o poseer un arma de fuego

(2) sin tener licencia.

…

**[El tribunal debe impartir la Instrucción 13.25 con las presunciones que apliquen del Artículo 6.26 de la Ley de Armas, acompañada de la Instrucción 3.39]. [El tribunal debe impartir esta Instrucción acompañada de la Instrucción 4.5].**

**Si después de ustedes analizar cuidadosamente toda la prueba presentada y admitida,** y en conformidad con las instrucciones que les impartí, **consideran que el Ministerio Público probo más allá de duda razonable cada uno de los elementos del delito** y que la persona acusada cometió los hechos por los cuales se le acusa, deberán rendir un veredicto de culpable por este delito.

Si, por el contrario, después de ustedes analizar cuidadosamente toda la prueba presentada y admitida, y en conformidad con las instrucciones que les impartí, consideran que el Ministerio Público no probó más allá de duda razonable que la persona acusada cometió los hechos por los cuales se le acusa, o si tienen duda razonable en cuanto a su culpabilidad, deberán rendir un veredicto de no culpable por este delito. (Énfasis nuestro). Íd., pags.354-355.

Con esta nueva instrucción se atienden los señalamientos de la instrucción impartida en el caso ante nuestra consideración y no se hace mandatoria la presunción de falta de licencia de portación de armas.

VI

Ahora bien, a pesar de que el error señalado por el señor Colón González se cometió, debemos estudiar si este es un error "no perjudicial" (*harmless*) y, por lo tanto, no procede la revocación de la condena.

En Pueblo v. Sánchez Molina, supra, pág. 595 citando a Yates v. Evatt, 500 U.S. 391 (1991), establecimos que para determinar si un error en las instrucciones al Jurado sobre el efecto de alguna presunción es o no perjudicial, "el tribunal apelativo debe primero considerar qué evidencia el Jurado en verdad consideró al llegar a un veredicto y, segundo, sopesar el valor probatorio de dicha evidencia contra el valor probatorio de la presunción". Para concluir que el error fue no perjudicial, el tribunal apelativo "necesita estar convencido más allá de duda razonable de que, dado lo abrumador del valor probatorio de la evidencia en verdad considerada por el Jurado comparado con el valor probatorio de la presunción, el veredicto hubiera sido el mismo en ausencia de la instrucción errónea". Pueblo v. Sánchez Molina, supra, pág. 595 citando a Yates v. Evatt, supra, pág. 405.

En esta jurisdicción está firmemente establecida la doctrina del *corpus delicti*. Pueblo v. Fradera Olmo, 122 DPR 67, 73 (1998). Esta doctrina requiere que las confesiones o admisiones de un acusado sean corroboradas con prueba independiente (*aliunde*) que tienda a establecer los elementos del delito. Íd. Véase, además, 1 McCormick On

Evidence sec. 146 (2020) ("*The traditional formulation of the corroboration requirement, still applied by many jurisdictions, demands that there be some evidence other than the confession that tends to establish the corpus delicti*"). En específico, se requiere que el Estado presente **evidencia sustancial independiente** que tienda a establecer la veracidad de las admisiones. <u>Pueblo v. Fradera Olmo</u>, <u>supra</u>, pág. 74.

A esos efectos, hemos reconocido que las "admisiones de un acusado sobre hechos que lo incriminen si no son corroboradas por otra evidencia, no son suficientes para sostener una convicción". <u>Pueblo v. Pérez Hernández</u>, 95 DPR 919, 922 (1968). La corroboración de una confesión con prueba *aliunde* se requiere con la finalidad de asegurar que nadie sea castigado por la comisión de un delito con la sola constancia de su propia confesión. <u>Pueblo v. Echevarría Rodríguez I</u>, <u>supra</u>.

Ahora bien, "la evidencia de corroboración no tiene que ser suficiente, independientemente de las admisiones o manifestaciones para establecer el *corpus delicti*; es suficiente si la evidencia de corroboración tiende a sostener los elementos esenciales admitidos por el acusado en forma tal que justifique la determinación de su veracidad por un jurado". <u>Pueblo v. Fradera Olmo</u>, <u>supra</u>, pág. 74. Véase, además, <u>1 McCormick</u>, <u>supra</u>, sec. 146. En ese sentido, la evidencia circunstancial puede ser suficiente corroboración. <u>Pueblo v. Pérez Hernández</u>, <u>supra</u>, pág. 922.

"Cuando hay alguna evidencia *aliunde* tendiente a establecer el *corpus delicti*, la admisión puede ser considerada en relación con esa evidencia para establecer el *corpus delicti*". Íd.

En su comparecencia ante nos, el Procurador General señaló que en este caso no se presumió la ausencia de licencia de portar armas del señor Colón González debido a que "confesó que no tenía licencia para portar el arma de fuego que utilizó". Escrito en cumplimiento de orden de mostrar causa, pág. 1.

Además, el Procurador General sostiene que la confesión del señor Colón González se corroboró de la siguiente manera: 1) se corroboró la llamada al sistema 911 en el que se menciona al señor Colón González como el autor del crimen; 2) se presentó el video en el que se ve al señor Colón González con un arma de fuego y le dispara a la víctima; 3) la víctima en efecto murió como consecuencia de los disparos perpetrados por el señor Colón González y 4) se levantaron nueve casquillos de balas consistentes con la cantidad de disparos que confesó el señor Colón González haberle propinado a la víctima. Íd., pág. 2

El jurado recibió extensa prueba directa y circunstancial del delito cometido por el señor Colón González. El ministerio público presentó videos donde se ve al imputado disparando a la víctima. De igual forma, se presentó la confesión del señor Colón González, a los efectos de que no contaba con licencia para portar arma y que se

negó a contestar dónde había conseguido el arma que utilizó. Así se desprende de la transcripción del juicio:

> R: ¿Tiene licencia de armas?
>
> P: ¿Cuál fue la respuesta del acusado?
>
> R: En la pagina 6: "No"
>
> …
>
> P ¿Cuando se le preguntó dónde la consiguió, que contesto el acusado?
>
> R "Eso no te lo voy a decir", es lo que está aquí escrito,…

Transcripción Estipulada, Tomo 5 del 25 de febrero de 2019, pág. 95.

No consta del récord que el señor Colón González o su representación legal hayan objetado la admisión de la confesión. Por lo tanto, fue debidamente admitida. Cuando evaluamos el valor probatorio de la evidencia física y testimonios que el jurado recibió, estamos convencidos de que el veredicto hubiera sido el mismo en ausencia de la instrucción errónea. Por lo tanto, resolvemos que en este caso el error en la instrucción al jurado de la presunción de portación ilegal de un arma no fue perjudicial y por ello, no exige la revocación del fallo.

## VII

Por los fundamentos expuestos, confirmamos la sentencia del Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

RAFAEL L. MARTÍNEZ TORRES<br>
Juez Asociado

EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.

                            CC-2021-0124

Vicmanuel Colón González

    Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2022.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, confirmamos la sentencia del Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Subsecretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco concurre sin opinión. El Juez Asociado señor Estrella Martínez emitió una opinión disidente a la cual se unió el Juez Asociado señor Colón Pérez. La Jueza Presidenta Oronoz Rodríguez no interviene.

María I. Colón Falcón
Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Vicmanuel Colón González<br><br>Peticionario | CC-2021-0124 | <u>Certiorari</u> |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une el Juez Asociado Señor COLÓN PÉREZ.

> "Decididamente, el mundo de lo dudoso es un paisaje marino e inspira al hombre presunciones de naufragio".[1]
>
> -José Ortega y Gasset

En San Juan, Puerto Rico, a 29 de junio de 2022.

¿Transgrede alguna garantía constitucional permitir que el Estado obtenga una condena mediante una presunción evidenciaria que no le requiere presentar prueba más allá de duda razonable sobre un elemento del delito de portación y uso de un arma de fuego sin licencia? **A mi juicio, la contestación forzosa tiene que ser en la afirmativa.**

Sin embargo, en lugar de descartar la vigencia de esta presunción anacrónica, la postura mayoritaria perpetúa y difumina su efecto. Al así hacerlo, la transforma en una presunción permisible bajo el supuesto

---

[1]J. Ortega y Gasset, *Ideas y Creencias y otros ensayos de Filosofía*, 11.ª ed., Madrid, Ed. Revista de Occidente, 1977, 32.

de que no le transfiere al acusado el peso de la prueba ni diluye la obligación del Estado. Empero, considero que esta propuesta mantiene en sus entrañas un defecto constitucional toda vez que **la presunción <u>continúa</u> recayendo sobre un elemento esencial e imprescindible del delito.** Con este proceder, se faculta al juzgador o al jurado a concluir la configuración de un elemento del delito mediante una presunción evidenciaria, exonerando así al Estado de su obligación de probar la culpabilidad de la persona acusada más allá de duda razonable en todos los elementos del delito. **Ello es insostenible y vulnera el derecho fundamental a la presunción de inocencia y al debido proceso de ley.**

Por otro lado, no puedo avalar que, tras reconocer que hubo un craso error en la forma en que se obtuvo la condena por el delito de portación de un arma sin licencia, la Mayoría sostenga su validez al concluir que este quedó probado mediante otra prueba. Sobre este particular, sostengo que la prueba en la que se apoya tal conclusión no respalda la comisión del delito ante nos. Habida cuenta de lo anterior, estimo que, tras la incapacidad del Estado de probar la ausencia de licencia para la portación del arma, este Tribunal debió revocar la condena por ese delito. **No puedo refrendar la incorrección de este curso de acción.** Por tanto, disiento.

A continuación, expongo las bases fácticas y legales que orientan mi disenso.

**I**

Por hechos ocurridos en el 2017, el Ministerio Público acusó al Sr. Vicmanuel Colón González (señor Colón González o Peticionario) de ocasionar la muerte de otra persona con un arma de fuego para la cual no poseía licencia.[2] El Peticionario confesó los hechos a un oficial del orden público. Pese a ello, no hizo alegación de culpabilidad y se acogió a su derecho a juicio por jurado.

Luego de celebrado el juicio plenario,[3] el Tribunal de Primera Instancia comunicó las debidas instrucciones a los miembros del jurado. En cuanto al delito de portar un arma de fuego sin licencia, impartió la instrucción siguiente: **"cuando el Ministerio Fiscal ha probado más allá de duda razonable la portación de arma corresponde al acusado probar como defensa afirmativa que sí estaba autorizado a portar un arma de fuego"**.[4]

---

[2] Al Peticionario se le formularon cargos por asesinato en primer grado (Art. 93 (a) del Código Penal, 33 LPRA sec. 5142), portar y usar un arma de fuego sin licencia (Art. 5.04) y por disparar un arma de fuego (Art. 5.15), ambos de la Ley de Armas de Puerto Rico (Ley de Armas), infra. Además, se le imputó un cargo por destrucción de prueba (Art. 286 del Código Penal, 33 LPRA sec. 5378).

[3] Para probar el delito de portación y uso de un arma de fuego, el Ministerio Público **únicamente** presentó el testimonio del agente investigador que le tomó la declaración jurada al señor Colón González.

[4] (Negrillas suplidas). Apéndice del certiorari, Transcripción estipulada de la prueba oral, Tomo del 14 de febrero de 2019, pág. 87 en las líneas 22-25.

Posteriormente, el jurado emitió un veredicto de culpabilidad por todos los delitos imputados y le fueron impuestas las penas correspondientes.[5]

Inconforme, el Peticionario acudió al Tribunal de Apelaciones e impugnó todas las condenas en su contra. En lo pertinente, argumentó que procedía la revocación de la condena por el delito de portación y uso de un arma de fuego sin licencia debido a que la "instrucción al jurado dada por el [Tribunal] violentó [su] presunción de inocencia. Además, relevó totalmente a la fiscal de su deber de tener que probar más allá de duda razonable un elemento del delito".[6]

Por su parte, el Estado arguyó que, de conformidad con la norma probatoria establecida en Pueblo v. Segarra, infra, surge una presunción de portación ilegal del arma si previamente se había alegado tal hecho en la acusación y posteriormente se probó la portación, por lo que no venía obligado a establecer la falta de licencia del acusado. En la alternativa, adujo que este hecho fue admitido por el Peticionario en su confesión. Sin embargo, argumentó que "la falta de prueba adicional (aliunde) sobre la no licencia de portar (Art. 5.04 de la Ley de Armas) más allá

---

[5]Por el delito de portar y usar un arma de fuego sin licencia se le impuso una sentencia de veinte (20) años de prisión.

[6]Apéndice del certiorari, Alegato de apelación, pág. 106.

de la confesión, no debe afectar la condena por disparar con ella".[7]

Tras evaluar la controversia, el foro apelativo intermedio confirmó la totalidad de la sentencia en contra del señor Colón González.

Aún insatisfecho, el Peticionario acudió ante nos y, en cuanto a la condena por infracción al Art. 5.04 de la Ley de Armas, infra, adujo que los foros recurridos erraron al encontrarlo culpable descansando únicamente en la presunción de ilegalidad de un arma toda vez que su confesión en cuanto a este extremo no fue corroborada.

Al considerar su planteamiento, este Tribunal emitió una orden de mostrar causa por la cual no debíamos revocar la condena del Peticionario en cuanto al delito de portación ilegal de un arma. Oportunamente, el Estado compareció y defendió la legalidad del dictamen en torno a este delito al negar que descansara únicamente en la presunción de ilegalidad de la portación de armas. En cambio, arguyó que probó todos los elementos del delito mediante la confesión del señor Colón González la cual estuvo acompañada de prueba circunstancial que comprueba la ilegalidad de la portación.

Trabada así la controversia, una Mayoría de este Tribunal respaldó un dictamen que reconoce que la instrucción impartida al jurado relevó al Estado de probar

---

[7] Íd., Alegato del Pueblo, pág. 76.

la ausencia de autorización para portar armas, lo cual es un elemento del delito tipificado en el Art. 5.04 de la Ley de Armas, infra. **Sin embargo, en un contrasentido jurídico, deja la puerta abierta para que el Estado continúe recurriendo a la presunción, incluso en la etapa del juicio, difuminándola como una permisiva la cual permite, pero no obliga al tribunal o jurado a concluir la ilegalidad de la portación.** Esto, sin que se presente prueba sobre la falta de licencia para la portación del arma.

Adelanto que, a mi juicio, la Mayoría erra al no decretar la prohibición absoluta de esta presunción en todo procedimiento criminal. Como veremos, el que se le otorgue un carácter permisivo no es suficiente para subsanar sus defectos crasos de incidir sobre un elemento esencial e imprescindible del delito y vulnerar el derecho fundamental a la presunción de inocencia.

Procedo, entonces, a exponer los fundamentos jurídicos que orientan mi criterio.

**II**

**A.**

La presunción de inocencia es un derecho de rango constitucional en nuestro ordenamiento jurídico. Esto, en virtud de la Carta de Derechos de la Constitución de Puerto Rico, la cual expresamente dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho […] a gozar de la presunción de inocencia". Art. II, Sec. 11,

Const. PR, LPRA, Tomo 1, ed. 2016, pág. 354. Entiéndase, la presunción de inocencia es un derecho fundamental que le asiste a toda persona acusada de delito en nuestro ordenamiento jurídico. Pueblo v. Santiago et al., 176 DPR 133, 142 (2009). El propósito principal de esta garantía constitucional es:

> [E]stablecer claramente que corresponde a la fiscalía demostrar, con **prueba admisible**, la culpabilidad de la persona acusada más allá de toda duda razonable. **En esa dirección, la inocencia de la persona acusada constituye el punto de partida en todo proceso criminal hasta que el Estado demuestre lo contrario, derrotando así la presunción**. Como se expresó durante las deliberaciones de la Convención Constituyente: "La presunción más importante que nosotros conocemos bajo el sistema judicial americano es la presunción de inocencia".
>     **El objetivo de esta cláusula es** descargar todo el peso probatorio, en cuanto a la culpabilidad de la persona acusada, en el ministerio público e **invalidar cualquier norma legal que sea contraria a este importante principio**.[8]

Debido a la transcendencia de la presunción de inocencia, el **Estado tiene la obligación de presentar evidencia suficiente sobre todos los elementos del delito y su conexión con el acusado a fin de establecer la culpabilidad de este más allá de duda razonable**. Pueblo

---

[8] (Negrillas suplidas). Pueblo v. Centeno, 2021 TSPR 133, 207 DPR __ (2021) (Opinión disidente del Juez Asociado Señor Estrella Martínez) (citando a J. Farinacci Fernós, La Carta de Derechos, 1ra ed., San Juan, Editorial de la Universidad Interamericana de Puerto Rico, 2021, pág. 202).

v. Casillas, Torres, 190 DPR 398, 414 (2014); Pueblo v. García Colón I, 182 DPR 129, 174 (2011). **Es decir, la presunción de inocencia es de tal peso que el acusado puede descansar en ella, sin tener obligación alguna de presentar prueba para defenderse**. Pueblo v. Irizarry, 156 DPR 780, 787 (2002). Así pues, esta constituye uno de los imperativos más básicos y esenciales del debido proceso de ley. Pueblo v. Casillas, Torres, supra; Pueblo v. Irizarry, supra, pág. 786. Cónsono con ello, la Regla 110 de Procedimiento Criminal, 34 LPRA Ap. II, establece que "[e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá". (Negrillas suplidas). Íd.

Para controvertir dicha presunción, se le exige al Estado un quantum de prueba de más allá de duda razonable durante la etapa del juicio. Pueblo v. Santiago et al., supra, pág. 142. En ese sentido, la prueba que justifique una convicción tiene que ser satisfactoria, de modo que "produzca la certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Pueblo v. Acevedo Estrada, 150 DPR 84, 100 (2000). Si la prueba desfilada por el Estado produce insatisfacción en el ánimo del juzgador, estamos ante duda razonable y fundada. Pueblo v. Cabán Torres, 117 DPR 645, 652 (1986). Por consiguiente, de ello ocurrir, "prevalece la

presunción de inocencia y procede la absolución del acusado o la acusada". <u>Pueblo v. Centeno</u>, supra, pág. 25.

**B.**

Por otro lado, una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. Regla 301 de Evidencia, 32 LPRA Ap. VI, R. 301. A ese hecho o grupo de hechos previamente establecidos se le denomina "hecho básico". Al hecho deducido mediante la presunción se le nombra "hecho presumido". Íd.

En lo que nos atañe, el efecto de una presunción en el contexto penal depende de si esta beneficia o perjudica al acusado. Ciertamente, una presunción que favorece al Ministerio Público y perjudica al acusado tiene que ser una presunción controvertible, permisiva y débil. <u>Pueblo v. Nieves Cabán</u>, 201 DPR 853, 873 (2019).

En <u>Pueblo v. Sánchez Molina</u>, 134 DPR 577 (1993), reconocimos que las presunciones permisibles no transfieren al acusado el peso de la prueba ni la obligación de persuadir al juzgador. Íd., pág. 588. Por tanto, estas serán válidas "a menos que el acusado pueda demostrar que, a la luz de los hechos probados en su caso particular, no había un nexo racional entre el hecho básico y el hecho presumido". Íd. Es decir, que no era razonable ni compatible con el sentido común que el juzgador de los hechos hiciera la conexión entre el hecho básico y el presumido. **Sin embargo, en aquel momento este Tribunal**

enfatizó que recurrir a esta presunción no puede ser la
única base en la que descanse la determinación de
culpabilidad. Íd. (citando a Ulster County Court v. Allen,
442 US 140, 167 (1979)). Asimismo, este Tribunal aclaró
que, independiente de su naturaleza, **"una presunción no
puede violar la presunción de inocencia ni la obligación
del Estado de probar cada elemento del delito más allá de
toda duda razonable"**. (Negrillas suplidas). Íd., pág. 587.

De hecho, la Regla 303 de las Reglas de Evidencia,
supra, la cual regula las presunciones en procedimientos
criminales, establece que:

> **Cuando en una acción criminal la
> presunción perjudica a la persona
> acusada, tiene el efecto de permitir a
> la juzgadora o al juzgador inferir el
> hecho presumido si no se presenta
> evidencia alguna para refutarlo.** Si de
> la prueba presentada surge duda
> razonable sobre el hecho presumido, la
> presunción queda derrotada. **La
> presunción no tendrá efecto alguno de
> variar el peso de la prueba sobre los
> elementos del delito o de refutar una
> defensa de la persona acusada.**
> (Negrillas suplidas). Íd.

Al analizar el alcance de la regla precitada, el
Comité Asesor Permanente de las Reglas de Evidencia
consignó que por "razones de rango constitucional, en los
casos criminales, una presunción no puede tener carácter
obligatorio ni fuerte contra el acusado o imputado. **A[u]n
así, ser permisiva si el hecho presumido es un elemento**

**esencial para la culpabilidad del acusado".[9]** Al respecto,

el tratadista Rolando Emmanuelli destaca **"que conforme a**

**la Regla [303 de las Reglas de Evidencia, supra], la**

**presunción que perjudica al acusado nunca podrá tener el**

**efecto de liberar al Ministerio Público de establecer uno**

**de los elementos del delito".[10]** De igual forma, el Profesor

Ernesto Chiesa nos explica que al analizar la validez de

una presunción:

> [D]ebe considerarse el efecto de [la] presunción atendiendo al tipo de presunción de conformidad con el estatuto correspondiente y lo dispuesto en las Reglas de Evidencia sobre el particular. Pero en casos por jurado, lo decisivo es la instrucción sobre la presunción. Una vez determinado el efecto de la presunción en el caso particular, **el análisis consiste en determinar si, de alguna manera, el ministerio público ha quedado relevado de establecer algún hecho esencial más allá de duda razonable o si se ha variado el peso de la prueba sobre tales hechos de modo que se imponga al acusado la obligación de persuadir, al menos por preponderancia de la evidencia; ambas son constitucionalmente inválidas.[11]**

---

[9](Negrillas suplidas). Véase, Comité Asesor Permanente de las Reglas de evidencia, Informe de las Reglas de Derecho Probatorio, (2007), disponible en: https://poderjudicial.pr/Documentos/Supremo/Informe Reglas-de-Derecho-Probatorio-2007.pdf (última visita, 29 de junio de 2022).

[10](Negrillas suplidas). R. Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño, 3ra edición, Ediciones SITUM, Inc., San Juan, P.R. (2010) pág. 167.

[11](Negrillas suplidas). E. Chiesa, Sobre la validez constitucional de las presunciones, XIV Rev. Jur. UIA 727, 752 (1980).

De lo anterior se desprende que una presunción evidenciaria que opera en contra de la persona acusada no puede tener el efecto de relevar al Estado de establecer un elemento esencial del delito más allá de duda razonable, así como tampoco variar el peso de la prueba.

En consecuencia, sostengo que una presunción, independientemente de su naturaleza, no puede recaer sobre un elemento del delito pues incide sobre la presunción de inocencia y la obligación del Estado de cumplir con el quantum de prueba para derrotarla.

**C.**

La Ley de Armas, 25 LPRA ant. 455 et seq., tipificaba como delito la portación y el uso de un arma de fuego sin licencia.[12] Art. 5.04, 25 LPRA ant. sec. 458c. Particularmente, establecía que "**[t]oda persona que transporte cualquier arma de fuego o parte de esta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave**". (Negrillas suplidas). Íd.

Como vemos, del estatuto precitado surgen dos (2) elementos esenciales e imprescindibles del delito: (**1**) **la portación del arma**, y (**2**) **la ausencia de autorización para esa portación**. Pueblo v. Negrón Nazario, 191 DPR 720, 752

---

[12]Este estatuto fue derogado y sustituido por la Ley Núm. 168-2019, Ley de Armas de Puerto Rico de 2020, 25 LPRA sec. 461 et seq. El Art. 6.05, 25 LPRA sec. 466d, contiene un lenguaje similar al Art. 5.04.

(2014). Así las cosas, "esa portación no autorizada puede darse bien porque la persona transporte un arma o parte de esta sin licencia, o bien porque la persona porte un arma de fuego sin permiso de portación". Íd.

Debido a que ambos elementos son partes indispensables de la comisión del delito, en Negrón Nazario expusimos que la portación ilegal de un arma de fuego podía demostrarse con: (1) evidencia de que, en efecto, la persona portó un arma de fuego sin un permiso a tales efectos, en cuyo caso la evidencia debe estar dirigida a demostrar la portación del arma y la ausencia de permiso, y (2) evidencia de que, aun cuando la persona contaba con un permiso, no la portó según los términos autorizados. Íd., pág. 757.

A pesar de lo anterior, en Pueblo v. Nieves Cabán, supra, una Mayoría de este Tribunal reafirmó la vigencia de una presunción hilvanada jurisprudencialmente en la década del 1950 en Pueblo v. Segarra, 77 DPR 736 (1954) y Pueblo v. Pacheco, 78 DPR 24 (1955).[13] Anclado en esa línea

_____

[13]En los casos precitados, al evaluar un lenguaje similar al Art. 5.04 de la Ley de Armas, supra, este Tribunal interpretó que de este surgía una presunción oponible contra la persona acusada en cualquier procedimiento penal que relevaba al Estado de establecer más allá de duda razonable la ausencia de licencia cuando alegaba tal hecho en la acusación y establecía la portación del arma de fuego. Es decir, se instauró una presunción que eximía al Estado de probar un elemento esencial e imprescindible del delito al no requerir la presentación de prueba sobre la ausencia de la licencia o permiso de portación. Por tanto, correspondía a la persona acusada destruir esa presunción.

jurisprudencial, en <u>Nieves Cabán</u> se concluyó que era válido inferir la ilegalidad de la portación del arma en la etapa de vista preliminar. De esta forma, se facultó al Estado a, mediante una presunción, obtener causa probable para acusar sin presentar ni un ápice de prueba que estableciera la ausencia de una licencia para portar un arma.

Dado lo anterior, el bloque disidente del cual formé parte suscribió una <u>Opinión disidente</u> en la cual se cuestionó la lógica adjudicativa de la Mayoría en cuanto a **"que la omisión de presentar evidencia respecto a la existencia de algo conlleva presumir su inexistencia"**. (Negrillas suplidas). Íd., pág. 895. (Opinión disidente de la Juez Asociada Señora Rodríguez Rodríguez). Y es que resulta **"inconcebible equiparar la aplicabilidad o activación de una presunción con la presentación efectiva de evidencia requerida para probar un elemento de un delito en un procedimiento criminal"**. (Negrillas suplidas). Íd., pág. 898.

Consecuentemente, sostuvimos que procedía descartar la presunción sobre la ausencia de una licencia de portación de armas. Ello estuvo basado en que, debido a la jerarquía de la presunción de inocencia —**la cual le impone al Estado probar más allá de duda razonable todos los elementos del delito**—, aplicar esa presunción sobre la ausencia de licencia era impermisible aun en la etapa de la vista preliminar. Íd., pág. 895.

Hoy, reafirmo que procede erradicar de nuestro ordenamiento jurídico la presunción de ilegalidad de la portación de un arma de fuego por su efecto transgresor sobre la garantía constitucional de la presunción de inocencia. **Ello, con más énfasis cuando nos encontramos en la etapa del juicio.** Así pues, en el descargo de mi responsabilidad, abundo en mi postura a continuación.

**III**

Opino que la propuesta articulada por la Mayoría es insuficiente para garantizar la plenitud de los derechos que pone en peligro tal presunción. Esto, ya que, en lugar de desterrar de una vez y por todas de nuestro ordenamiento esta presunción, la mantiene vigente. Así pues, **en la etapa del juicio**, "la presunción de portación ilegal permite, pero no obliga a inferir el hecho presumido (la falta de licencia para portar arma)".[14] **No puedo avalar la perpetuación de esta presunción en nuestro ordenamiento.**[15]

---

[14]Íd., pág. 23.

[15]**Resáltese que en el nuevo <u>Manual de Instrucciones al Jurado</u>, aprobado de forma unánime por este Tribunal, se excluyó esta presunción de las instrucciones que deberán ser impartidas sobre el delito de portación, transportación y uso de un arma de fuego sin licencia vigente.** En cambio, se enfatiza que el jurado solo deberá rendir un veredicto de culpabilidad si el Estado probó más allá de duda razonable cada uno de los elementos del delito. **Evidentemente, ello denota lo anacrónico que es mantener vigente esta presunción bajo el alegado carácter permisivo que la Mayoría le otorga.** Véase, <u>In re: Aprobación del Libro de Instrucciones al Jurado</u>, 2022 TSPR 33, 208 DPR ___ (2022) (Resolución).

Aunque la Mayoría intenta impartirle un nuevo carácter a la presunción de portación ilegal de un arma, su propuesta reproduce lo que señalamos desde la disidencia en Pueblo v. Nieves Cabán, supra. Esto, principalmente, debido a que esta recae sobre un elemento esencial del delito, lo cual tiene el efecto nocivo de eximir al Estado de su obligación de probar estos más allá de duda razonable. **Reitero que ello incide adversamente sobre la presunción de inocencia y el debido proceso de ley, derechos que cobijan a toda persona acusada de delito.**

Por tanto, al margen del presunto efecto que la Mayoría le imparte, reafirmo que una presunción no puede ser utilizada para probar la comisión de un delito. Ello, máxime, por razón de que una presunción **nunca podrá "estar reñid[a] con la obligación del Ministerio Público de probar más allá de duda razonable todos los elementos del delito".**[16]

De hecho, en Pueblo v. Nieves Cabán, supra, la disidencia vaticinó los riesgos y el contrasentido de aplicar esta presunción durante los procedimientos penales. Particularmente porque **"la ausencia de evidencia sobre la existencia de una licencia permite a un juez [o a un jurado] concluir que la evidencia es inexistente".** (Negrillas suplidas). Íd., pág. 895. Más importante aún:

> **[E]ste análisis permite que el hecho base y el hecho presumido conformen**

---

[16]Comité Asesor Permanente de las Reglas de evidencia, op. cit., pág. 96.

> **los dos elementos del delito. Ello es así porque el delito no está tipificado como la mera posesión, lo que constituye el hecho base, sino la posesión sin licencia para ello. No puede perderse de vista que la ausencia de licencia, lo que figura como el hecho presumido bajo el razonamiento de la mayoría, es un elemento esencial del delito y que, como tal, obliga al [Estado] a presentar prueba sobre su configuración.** (Negrillas suplidas). Íd.

Hoy, la incongruencia señalada desde el disenso se torna jurisprudencia normativa en nuestro ordenamiento probatorio y penal. Considero impermisible colocar a la persona acusada en la disyuntiva de renunciar a sus garantías constitucionales para arrojar duda sobre el hecho presumido —el cual constituye un elemento del delito— y neutralizar la presunción de portación ilegal o exponerse a que el juzgador o el jurado infiera el hecho presumido y con ello concluya que el delito quedó establecido más allá de duda razonable. Esto sin que se haya presentado prueba en cuanto a la ausencia de licencia de portación de arma.

En este análisis, no puedo perder de perspectiva el elemento del delito sobre el cual recae la presunción: la ausencia de licencia de portar armas. Establecer más allá de duda razonable este extremo no es oneroso para el Estado. Todo lo contrario. **Basta que presente una certificación negativa de permiso de licencia obtenida de las bases de datos que el propio Estado controla.** A fin

de cuentas, este es quien ejerce el poder inherente de reglamentación sobre la posesión, portación y venta de armas de fuego. Pueblo v. Barahona Gaitán, 201 DPR 567, 577 (2018). **Ante esa realidad, no existe justificación jurídica alguna para ponerle cortapisas a la presunción de inocencia y el debido proceso de ley. Tampoco para facilitarle al Estado el obtener una condena mediante una presunción que permite al juzgador inferir un elemento del delito sin que se le haya presentado prueba que lo evidencie.**[17]

Por considerar que perpetuar la presunción sobre un elemento imprescindible del delito contemplado en el Art. 5.04 de la Ley de Armas, supra, riñe irremediablemente con la presunción de inocencia y exime al Estado de probarlo más allá de duda razonable, disiento con el criterio mayoritario. En consecuencia, descartaría esta presunción y exigiría que el Estado cumpla con el quantum de prueba requerido en las distintas etapas del procedimiento penal para obtener una condena por el delito de portación y uso de un arma de fuego sin licencia.

Expuesta mi postura en cuanto a este asunto de umbral, procedo entonces a discutir el señalamiento de error esbozado por el Peticionario.

---

[17]Ello es cónsono con lo pautado en Pueblo v. Negrón Nazario, supra, en cuanto a que, para probar este delito, el Estado tiene que presentar evidencia de que, en efecto, la persona portó un arma de fuego sin un permiso. En ese sentido, la evidencia debe estar dirigida a demostrar la portación del arma y la ausencia de permiso.

## IV

En su comparecencia ante nos, el señor Colón González arguye que el Tribunal de Apelaciones confirmó su condena por el delito de infracción al Art. 5.04 de la Ley de Armas, supra, descansando únicamente en una confesión que no se corroboró. El Peticionario sostiene que tal proceder es contrario a las normas que hemos pautado en cuanto a que toda confesión requiere corroboración con prueba independiente (aliunde) que tienda a establecer los elementos del delito.

Por su parte, el Procurador General argumenta que en este caso hubo una confesión en la que el señor Colón González admitió la totalidad de los hechos delictivos. Añade que este aceptó expresamente que no tenía licencia para portar el arma de fuego utilizada. De igual forma, aduce que la confesión estuvo corroborada por evidencia circunstancial que permite concluir que el Peticionario no tenía licencia para portar un arma de fuego.

Sabido es que la confesión o las declaraciones incriminatorias de la persona acusada no son suficientes para probar su culpabilidad más allá de duda razonable. Pueblo v. Pérez Fernández, 95 DPR 919, 922 (1968). Ello, ya que en nuestro ordenamiento jurídico está arraigada la doctrina del corpus delicti la cual mandata que toda confesión o declaración incriminatoria sea corroborada. Es decir, esta doctrina impone al Estado la obligación de corroborar una confesión con prueba independiente

(aliunde) que permita establecer los elementos del delito en unión con la confesión. Pueblo v. Fradera Olmo, 122 DPR 67, 73 (1998).

En ese sentido, para que una admisión o declaración autoincriminatoria pueda dar base a un veredicto de culpabilidad, el Estado tiene que acompañarla con alguna otra prueba, directa o circunstancial, que la corrobore. Pueblo v. Morales Rivera, 112 DPR 463, 470-471 (1982). De este modo, "[l]o que se requiere es que [e]l Pueblo traiga evidencia sustancial independiente que tienda a establecer la veracidad de las admisiones". Pueblo v. Pérez Fernández, supra, pág. 922. **Claro está, la prueba independiente debe estar dirigida a corroborar la confesión con relación al delito imputado.**

Con este marco normativo de trasfondo, procede analizar si, en este caso particular, el Estado presentó prueba sustancial e independiente (aliunde) que corroborara la confesión del señor Colón González en cuanto al delito de portación y uso de un arma de fuego sin licencia contemplado en el Art. 5.04 de la Ley de Armas, supra. **Adelanto que considero que no lo hizo.** Me explico.

Un examen de la transcripción estipulada de la prueba oral revela que el Estado recurrió exclusivamente a la confesión extrajudicial del señor Colón González para establecer la ausencia de licencia para portar arma de

fuego. [18] Entiéndase, **no obra en el expediente alguna otra prueba que establezca la ausencia de licencia del Peticionario**. Por consiguiente, no se satisface el criterio de prueba independiente que corrobore su confesión extrajudicial según requerido en nuestra jurisdicción. [19]

Empero, en su comparecencia ante este Tribunal, el Procurador General insiste en resaltar que hubo una confesión del señor Colón González en cuanto a este asunto. [20] A su vez, afirma que esa confesión, la cual va dirigida a establecer un elemento imprescindible del delito tipificado en el Art. 5.04 de la Ley de Armas, supra, fue corroborada con la prueba aliunde que examinamos a continuación: (1) la confirmación de la llamada al sistema 9-1-1 en la que se menciona al Peticionario como el autor del crimen; (2) la presentación del video en el que se observa al señor Colón González con un arma de fuego y le dispara a la víctima; (3) que la

---

[18]Véase, Apéndice del certiorari, Transcripción estipulada de la prueba oral, Tomo del 11 de febrero de 2019, pág. 95.

[19]Nótese que consistentemente hemos requerido la presentación de prueba independiente que corrobore la confesión extrajudicial con relación a los elementos de los delitos imputados. Véase, Pueblo v. Campos Suárez, 86 DPR 310 (1962); Pueblo v. Pérez Fernández, supra; Pueblo v. Morales Rivera, supra; Pueblo v. Fradera Olmo, supra; Pueblo en interés menor J.A.B.C, 123 DPR 551 (1989) y Pueblo v. Hernández Mercado, 126 DPR 427 (1990).

[20]Escrito en cumplimiento de orden de mostrar causa, pág. 1.

víctima, en efecto, murió como consecuencia de los disparos perpetrados por el Peticionario, y (4) prueba de que en la escena se levantaron nueve (9) casquillos de balas.[21]

De un análisis sereno de esta prueba, es forzoso concluir que esta es insuficiente para corroborar el delito ante nuestra consideración. **Entiéndase, esa prueba <u>aliunde</u> no corrobora la confesión en cuanto a la ausencia de licencia.** Por consiguiente, no puedo ratificar, tal y como erróneamente lo hace la Mayoría, que la confesión sobre la ausencia de licencia de portar armas quedó corroborada. De este modo, sostengo que persiste una ausencia de prueba sobre un elemento imprescindible del delito tipificado en el Art. 5.04 de la Ley de Armas, <u>supra</u>.

De hecho, así lo reconoció el Procurador General en su <u>Alegato</u> ante el Tribunal de Apelaciones, donde expuso que:

> **<u>Debemos señalar que el hecho de la falta de prueba adicional (aliunde) sobre la no licencia de portar (artículo 5.04 de la Ley de Armas) más allá de la confesión</u>**, no debe afectar la condena por disparar con ella. Y es que se puede disparar (artículo 5.14 de la Ley de Armas) con un arma para la cual se tenía licencia, pues la licencia o ausencia de esta no es un

---

[21] <u>Íd.</u>, pág. 2. Véase, también, Opinión mayoritaria, pág.26.

elemento del delito de disparar en un
sitio público.[22]

Nótese cómo hasta el Estado reconoció y se allanó al planteamiento de la ausencia de prueba de corroboración. Tanto así, que, incluso, en su _Alegato_ se limitó a solicitar que se confirmaran las sentencias relacionadas al asesinato, la destrucción de pruebas y por disparar un arma de fuego. Es decir, dejó fuera la sentencia condenatoria por la infracción al Art. 5.04 de la Ley de Armas, _supra_.

En fin, todo lo anterior hace forzosa la conclusión de que el Estado no probó un elemento del delito: la ausencia de licencia para portar un arma de fuego. Evidentemente, este descansó únicamente en la presunción evidenciaria examinada previamente y con ello obtuvo un veredicto de culpabilidad. Ante la falta de prueba independiente y sustancial que corrobore la confesión sobre este elemento del delito, lo que correspondía era dejar sin efecto el fallo por la infracción al Art. 5.04 de la Ley de Armas, _supra_. Al ser otro el criterio mayoritario, disiento.

## V

Por no avalar que continúe vigente una presunción que permite al Estado quedar eximido de probar un elemento del delito y, con ello, obtener una condena sin presentar

---

[22] (Negrillas y énfasis suplido). Apéndice del _certiorari_, _Alegato del Pueblo_, pág. 76.

prueba que derrote la presunción de inocencia, disiento. Consecuentemente, hubiese revocado parcialmente a los foros recurridos y dejado sin efecto la condena impuesta al palio del Art. 5.04 de la Ley de Armas, supra, toda vez que hubo ausencia de corroboración de la confesión en cuanto a la falta de licencia para portar un arma de fuego.

Por consiguiente, no me queda más que distanciarme del curso de acción adoptado por la Mayoría y disentir.


Luis F. Estrella Martínez
Juez Asociado